**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| Priority | ____ |
| Send | ____ |
| Enter | ____ |
| Closed | ____ |
| JS-5/JS-6 | X |
| Scan Only | ____ |

**CASE NO.:**   <u>CV 18-08093 SJO (AGRx)</u>          **DATE:** <u>May 1, 2019</u>

**TITLE:**   <u>Golden Gate Transactional Independent Service, Inc., et al., v. State of</u>
<u>California, et al.</u>

========================================================================
**PRESENT:  THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE**

Victor Paul Cruz                                  Not Present
Courtroom Clerk                                  Court Reporter

**COUNSEL PRESENT FOR PLAINTIFF:**     **COUNSEL PRESENT FOR DEFENDANT:**

Not Present                                      Not Present

========================================================================
**PROCEEDINGS (in chambers):    ORDER DISMISSING FIRST AMENDED COMPLAINT
WITHOUT LEAVE TO AMEND** [Docket No. 56, 57, 58]

These matters are before the Court on (1) Defendants State of California, Patrick Shanahan,
Daniel Alvarez, and MaryJo Schnitzer's (collectively, "State Defendants") Notice of Motion and
Motion to Dismiss ("State Mot. to Dismiss"), filed on December 11, 2018; (2) Defendants City of
Los Angeles, Ralph M. Terrazas, Chris Da Broi, and Lindsey Pellegrini's (collectively, "City
Defendants") Notice of Motion and Motion to Dismiss ("City Mot. to Dismiss"), filed on November
8, 2018; and (3) Defendants County of Los Angeles and Michelle Lacavalier's (collectively,
"County Defendants") Notice of Motion and Motion to Dismiss ("Cty. Mot. to Dismiss"), filed on
November 16, 2018.   Plaintiffs Golden Gate Transitional Independent Services, Inc., Rosie's
Garden View Transitional Independent Service, Inc., Vardui Sarafyan, Judie Smith, Nancy Moody,
Jaymelle Hinton, Sargen Poureshagh, and Rosemary Lewis (collectively, "Plaintiffs") opposed all
three Motions to Dismiss ("Opposition") on January 8, 2018.  State Defendants filed a Reply on
January 9, 2019 ("State Reply").  City Defendants filed a Reply on January 9, 2019 ("City Reply").
County Defendants filed a Reply on January 8, 2019 ("County Reply"). The Court found this matter
suitable for disposition without oral argument and vacated the hearing.  *See* Fed. R. Civ. P. 78(b).
For the reasons discussed below, the Court **DISMISSES** Plaintiffs' First Amended Complaint
**WITHOUT LEAVE TO AMEND**.

I.    <u>FACTUAL & PROCEDURAL BACKGROUND</u>

The instant action arose out of alleged violations of the Fair Housing Act ("FHA") and the
Americans With Disabilities Act ("ADA"). (First Amended Complaint ("FAC"), ECF No. 51.)
Plaintiffs allege that Defendants violated these laws in connection with the operation of supportive
housing facilities owned by Golden Gate Transitional Independent Service, Inc. ("Golden Gate")
and Rosie's Garden View Transitional Independent Services, Inc. ("Rosie's Garden"). (*See
generally* FAC.)  The operative first amended complaint alleges as follows.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

**CASE NO.:** <u>CV 18-08093 SJO (AGRx)</u>          **DATE:** <u>May 1, 2019</u>

Plaintiff Vardui Sarafyan ("Plaintiff" or "Vardui") established Rosie's Garden in May 2016 and Golden Gate in or around September 2017. (FAC 4.) Rosie's Garden and Golden Gate are California corporations that provide affordable "supportive housing" to primarily disabled individuals. (FAC ¶ 1.) Hospitals, assisted living facilities, the Los Angeles County Department of Mental Health, and other "varied sources" refer residents to Rosie's Garden and Golden Gate. (FAC ¶ 13.) Plaintiffs contend that the disabled residents living at Rosie's Garden and Golden Gate are "independent" and "obtain [medical] care and supervision from third parties." (FAC ¶ 35.) The residents are primarily low-income and Social Security Supplemental Security Income ("SSI") beneficiaries, and the SSI benefits checks are used to pay all or part of their accommodation. (FAC ¶ 35.) Vardui does not evict residents for nonpayment of rent. (FAC ¶ 37.)

On December 20, 2016, officials from the California Department of Social Services ("CDSS"), L.A. Department of Mental Health, and the Los Angeles Police Department made an unannounced visit to Rosie's Garden to investigate a complaint that it was an unlicensed facility providing medical care. (FAC ¶¶ 38-39.) Following the investigation, CDSS concluded that the "complaint was unfounded, meaning that the allegation was false, could not have happened, and/or is without a reasonable basis." (FAC ¶ 39.) Plaintiffs' FAC alleges various incidents in which Rosie's Garden and Golden Gate were mistakenly investigated or sent notices pursuant to complaints regarding former owners of its property. (FAC 7-9.)

On October 24, 2018, the Los Angeles Department of Building and Safety ("LADBS") sent an order to comply to Golden Gate requesting a certificate of occupancy, stating that it was operating a transitional care facility without a permit. (FAC ¶ 45.) On October 25, Defendant Pellegrini cited Vardui for a fire safety violation, stating that Golden Gate was in an "unsafe condition" and requesting that a certificate of occupancy be sent to LADBS. (FAC ¶ 46.) The FAC alleges that "due to the alleged fire safety violation," Golden Gate placed fire extinguishers around the house and retained the services of ADT Home Security to install a "high-tech 24-hour monitoring system." (FAC ¶ 47.) Plaintiffs allege that Golden Gate was forced to incur "additional costs and monthly recurring costs to retain ADT and its services." (*Id.*) On October 30, Defendant Da Broi issued another notice to comply requiring Golden Gate to hire at least two people to perform fire watch "24-hours a day, 7-days a week" until the fire department determined that it was no longer necessary. (FAC ¶ 48.) Plaintiffs allege the estimated cost for this fire watch is $25,000 to $30,000 per month. (FAC ¶ 49.) The FAC does not show whether Golden Gate ever complied or attempted to comply with this requirement.

Plaintiffs allege that various Defendants harassed and intimidated them following these notices. (FAC 9-12.) Defendants allegedly made unannounced visits where they questioned residents, took photos without permission, inspected personal property, and "violat[ed] residents' rights by inspecting their medications and other intrusive unpermitted actions." (FAC ¶ 49.) The FAC states that Vardui and other residents felt "helpless, discriminated, harassed, emotionally distressed and frightened." (*Id.*) At one point, Defendants Shanahan and Alvarez stopped an unnamed referral from entering Golden Gate and sent them back to the referring nursing care

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

CIVIL MINUTES - GENERAL

CASE NO.:  CV 18-08093 SJO (AGRx)          DATE: May 1, 2019

center, notifying the center that Golden Gate was an unlicensed facility.  (FAC ¶ 62.)  The FAC claims that this specific incident caused Golden Gate and Vardui to "incur[ ] monetary damages in terms of lost income from the person who was referred to them as a paying tenant."  (FAC ¶ 63.)

The FAC also contends that Plaintiff Vardui's arrest on March 1, 2018 for allegedly making a criminal threat against Defendant Schnitzer is a form of retaliation "in violation of Title II of the ADA."  (FAC 9-10.)  Vardui was arrested after she purportedly told Schnitzer over the phone: "I will be in tomorrow at 11 am to meet with Maryjo and she better be wearing a bulletproof vest."  (FAC ¶¶ 50-51.)  No formal charges were ever filed. (FAC ¶ 54.)  After Vardui was released from jail, she sought medical treatment for "bilateral wrist pain, [ ] leg pain, and chest pain due to anxiety and nervousness."  (FAC ¶ 55.)  The FAC contends that Vardui "had to retain a criminal defense [sic] and paid [sic] attorney's fees in addition to the bail money that was paid."  (FAC ¶ 56.)  In sum, Vardui "suffered monetary damages for hiring an attorney relative to the CHP arrest and the medical expenses she incurred as [a] result of the physical injuries she suffered during arrest and detention."  (FAC ¶ 56.)

Both Golden Gate and Rosie's Garden were given further citations for operating unlicensed boarding homes.  (FAC 11-12.)  On July 6, 2018, the Office of the City Attorney of Los Angeles sent notice to Plaintiff Vardui that her and her husband were being charged with a "criminal offense for code enforcement and operating without a license and permit."  (FAC ¶ 59.)  Specifically, the notice informed Vardui that she was being charged with misdemeanors pursuant to the Los Angeles Municipal Code for violation of the Fire Code and for violating the Los Angeles County Code for operating without a public health license and permit.  (FAC ¶ 60.)  As a result of these charges, the FAC claims that Vardui has "incurred damages and will incur more damages in terms of spending on attorney's fees."  (FAC ¶ 61.)

On August 14, 2018, Defendants Shanahan and Alvarez executed search warrants at Rosie's Garden and Golden Gate.  (FAC ¶ 64.)  Following the search, Defendant Shanahan issued a civil penalty assessment against Vardui for $96,000 for operating an unlicensed facility. (FAC ¶ 65.)  Defendant Alvarez also issued a "Plan of Correction," which stated that Vardui was required to apply for a license within fifteen days or relocate its residents who were in need of medical care.  (*Id.*)  The FAC contends that because Plaintiff Vardui "cannot comply" with the Plan of Correction issued by Alvarez, she has allegedly "closed down" Rosie's Garden and suffered "monetary damages in terms of lost [ ] income."  (FAC ¶ 66.)

On October 24, 2018, officers from the California Department of Justice executed a search warrant at Golden Gate allegedly based upon information provided by Defendants Schnitzer, Shanahan, and Alvarez.  (FAC ¶¶ 67-68.)  In the process of executing the warrant, officers "had to break down some locks and doors in order to gain access to the rooms."  (FAC ¶ 67.)  Plaintiff Jamelle Hinton was arrested during the search but later released from custody.  (*Id.*)  The FAC contends that "as a result of the service of the search warrant," Golden Gate and Vardui "suffered

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority         ____
Send             ____
Enter            ____
Closed           ____
JS-5/JS-6        ____
Scan Only        ____

**CASE NO.:** <u>CV 18-08093 SJO (AGRx)</u>          **DATE: <u>May 1, 2019</u>**

monetary damages in the repair of the locks and doors destroyed by officers ... and the payment of attorney's fees to an attorney to handle this matter." (FAC ¶ 68.)

Plaintiffs Judie Smith, Nancy Moody, Jaymelle Hinton, Sargen Poureshagh, and Rosemary R. Lewis claim they have "experienced anxiety, nervousness, and restlessness" and have suffered "physical and emotional injuries" as a result of Defendants' actions. (FAC ¶ 69.)

On September 27, 2018, Plaintiffs filed the instant action against State Defendants, City Defendants, and County Defendants. (*See generally* Compl., ECF No. 1.) Plaintiffs asserted two causes of action: (1) discrimination in violation of the Fair Housing Act ("FHA"); and (2) discrimination in violation of Title II of the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12132 and its implementing regulations, 28 C.F.R. Part 35. (Compl. 3.) The Court ultimately dismissed the Complaint on January 22, 2019 with leave to file an amended complaint **within 10 days** from the date of its order. (*See* ECF No. 50.)

On February 6, 2019, Plaintiffs untimely filed a First Amended Complaint ("FAC") that asserts the same allegations made in their initial complaint with minor additions relating to the monetary costs or damages they incurred as a result of Defendants' actions. (*See generally* FAC.) In their FAC, Plaintiffs now seek: (1) declaratory relief; (2) injunctive relief; (3) compensatory damages; and (4) attorney's fees and costs. (FAC 15-16.)

On February 27, 2019, all Defendants filed three separate Motions to Dismiss Plaintiffs' FAC pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (*See generally* County Mot., ECF No. 56; State Mot., ECF No. 57; City Mot., ECF No. 58.)

Each Motion before this Court argues that Plaintiffs do not have Article III standing to bring either their ADA or FHA claims, and have thus failed to establish that the Court has subject matter jurisdiction pursuant to Federal Rules of Civil Procedure 12(b)(1). (*See generally* County Mot.; State Mot.; City Mot.)

These proceedings followed.

II.     LEGAL STANDARD

        A.     Article III Standing

Under Rule 12(b)(1), a party may move for dismissal of a claim on the grounds that the Court lacks federal subject matter jurisdiction. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101-02 (1998). If a FAC fails to allege facts sufficient to establish standing under Article III of the U.S. Constitution, the court lacks subject matter jurisdiction and the case must be dismissed. *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). To have standing, a plaintiff must establish three elements. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority    ____
Send        ____
Enter       ____
Closed      ____
JS-5/JS-6   ____
Scan Only   ____

**CASE NO.:   CV 18-08093 SJO (AGRx)**          **DATE: May 1, 2019**

(1992). First, the plaintiff "must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 560 (citations omitted). Second, "there must be a causal connection between the injury and the conduct complained of–the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant and not . . . th[e] result [of] the independent action of some third party not before the court.'" *Id.* (citations omitted). Third, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id.* at 561 (citation omitted). The burden falls on the plaintiff to show that it has met all three requirements. *Id.*

A jurisdictional standing challenge may be facial or factual in nature. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A defendant brings a facial challenge when they do not challenge a plaintiff's statement of the facts but instead argue that a FAC fails to plead sufficient facts to establish Article III standing. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975). In a facial attack, the court accepts all material allegations in the FAC as true and construes them in favor of the party asserting jurisdiction. *Id.* Where the attack is factual, "[n]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (internal citations omitted).

Here, all Defendants bring a facial Article III challenge against Plaintiffs' FHA and ADA claims. The Court thus adjudicates Plaintiff's Article III standing by reference to the allegations in the FAC and assumes the truth of these allegations.

> B.      Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim tests the legal sufficiency of the claims asserted in a complaint. *Ileto v. Glock, Inc.,* 349 F.3d 1191, 1199-200 (9th Cir. 2003). In evaluating a plaintiff's claims, a court may only consider the complaint, documents incorporated by reference in the complaint, and matters of judicial notice. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). The Court must accept the plaintiff's material allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *Shwarz v. United States,* 234 F.3d 428, 435 (9th Cir. 2000). Dismissal is proper only if the complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The tenet that a court must accept as true all of the facially plausible claims contained in a complaint, however, is "inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice[.]" *Iqbal*, 556 U.S. at 678. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content', and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority     ____
Send         ____
Enter        ____
Closed       ____
JS-5/JS-6    ____
Scan Only    ____

**CASE NO.:**  <u>CV 18-08093 SJO (AGRx)</u>          **DATE:** <u>May 1, 2019</u>

As a general rule, leave to amend a complaint which has been dismissed should be freely granted. Fed. R. Civ. P. 15(a).  However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986); *see Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)

III.     <u>ANALYSIS</u>

A.     <u>The Court Declines to Dismiss Plaintiffs' FAC Pursuant to Rule 15(a)(1)(B)</u>

As a threshold matter, the Court addresses County Defendants' argument that the FAC should be dismissed because it was untimely filed.  (*See* County Mot. 3.)

Here, the Court agrees that Plaintiffs' FAC was filed too late to qualify as an amendment as a matter of course under Fed. R. Civ. P. 15(a)(1)(B).   Plaintiffs filed the FAC more than two weeks after the Court granted only 10 days leave to amend without first obtaining written consent from the opposing parties or seeking leave from the Court to file their pleading.  (*See* ECF No. 50, 51.) Ordinarily, the untimely filing of Plaintiffs' FAC would result in that pleading having no legal effect. *See, e.g.*, *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990); *Larry O. Crother, Inc. v. Lexington Ins. Co.*, 2011 WL 1084201, at *2 (E.D. Cal. Mar. 21, 2011); *Fagorala v. Nationstar Mortgage, LLC*, 2010 WL 2278722, at * 1 (N.D. Cal. June 7, 2010); *Sutton v. Holz*, 2007 WL 3027345, at * 2–3 (N.D. Cal. Oct. 15, 2007).   However, it is well within the Court's discretion to permit amendments with "extreme liberality."  *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981).

In considering whether to dismiss a case for failure to comply with a court order, the district court weighs: (1) the public interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic alternatives. *Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992), *cert. denied*, 506 U.S. 915 (1992).  Prejudice to the opposing party is the most important factor.  *Zenith v. Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330-31 (1971) (trial court "required" to take potential prejudice into account in deciding Rule 15(a) motion to amend).

Here, the Court is perplexed as to why Plaintiffs have failed to offer any definitive reason for their delay, and instead brazenly assert in their Opposition to County Defendants' Motion to dismiss that there are less than 10 days between January 22, 2019 (the date the Court granted leave to amend) and February 6, 2019 (the date Plaintiffs' filed their FAC.  (Opp. to County Mot. 3.)  Even in light of these circumstances, the Court fails to find any clear "deviousness or willfulness" on the part of Plaintiffs to purposely delay litigation or cause prejudice to Defendants.  *See E. & J. Gallo Winery v. Cantine Rallo, S.p.A.*, 430 F. Supp. 2d 1064, 1088 (E.D. Cal. 2005) (citing *Bateman v. U.S. Postal Service*, 231 F.3d 1220, 1225 (9th Cir.2000)).  Further, Defendants' Motions are silent as to whether the untimely filing of the FAC resulted in any prejudicial impact.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority     ____
Send         ____
Enter        ____
Closed       ____
JS-5/JS-6    ____
Scan Only    ____

**CASE NO.:  CV 18-08093 SJO (AGRx)**          **DATE: May 1, 2019**

Although it is unclear why Plaintiffs overtly violated Rule 15, the Ninth Circuit has noted that this Court "must be guided by the underlying purpose of Rule 15—to facilitate decision on the merits rather than on the pleadings or technicalities." *Eldridge v. Block*, 832 F.2d 1132, 1135 (9th Cir. 1987) (citations omitted).  Accordingly, the Court holds that it will consider Plaintiffs' FAC as the operative complaint in this case.  The Court will therefore address the merits of Defendants' Motions to dismiss as it relates the substance of the FAC and determine whether it should instead be dismissed pursuant to Rules 12(b)(1) and 12(b)(6).  (*See generally* County Mot.; City Mot.; State Mot.)

     B.    <u>Motions to Dismiss Under Rule 12(b)(1)</u>

The Court ultimately concludes that Plaintiffs' FAC sufficiently alleges an injury in fact to establish Article III standing as to **both** their FHA and ADA claims against the City of Los Angeles, City Defendant Da Broi, County Defendants, and State Defendants.  However, the FAC fails to demonstrate an injury in fact sufficient to show Plaintiffs have standing to bring their FHA or ADA claims against City Defendants Terrazas and Pellegrini.  *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 351-52 (2006) (holding that at least one plaintiff "must demonstrate standing for **each claim he seeks to press**").

Accordingly, the Court **DENIES** County and State Defendants' Motions to dismiss for lack of standing under 12(b)(1).  The Court **GRANTS IN PART** City Defendants' Motion to dismiss Plaintiffs' claims against City Defendants Terrazas and Pellegrini **AND DENIES IN PART** City Defendants' Motion to dismiss insofar as it moves to dismiss Plaintiffs' claims as to the remaining City Defendants for lack of standing under Rule 12(b)(1).

     1.    <u>Article III Standing for Plaintiffs' FHA Claim</u>

The Court begins again by analyzing the purported injury in fact that Plaintiffs suffered with respect to their FHA cause of action.

Any person harmed by discrimination, whether or not they themselves are the target of the discrimination, may sue under the FHA.  *See San Pedro Hotel Co., v. City of Los Angeles*, 159 F.3d 470, 475 (9th Cir. 1998).  Unlike other related civil rights provisions, the FHA provides for a private claim to those who are "aggrieved" by discriminatory conduct. 42 U.S.C. § 3604(f)(1); *Growth Horizons, Inc. v. Delaware County, Pa.*, 983 F.2d 1277, 1282 n. 7 (3d Cir.1993) (holding that a corporation providing community living arrangements for the mentally ill has standing to bring suit under the Fair Housing Act for county's alleged discriminatory refusal to assume its leases).

The Supreme Court has firmly stated that Congress intended standing under the FHA to "extend to the full limits of Art[icle] III." *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 103 (1979). However, Congress "cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Raines v. Byrd*, 521 U.S. 811,

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority    _____
Send        _____
Enter       _____
Closed      _____
JS-5/JS-6   _____
Scan Only   _____

**CASE NO.:   CV 18-08093 SJO (AGRx)**          **DATE: May 1, 2019**

820 n.3 (1997).  As such, "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo, Inc. v. Robbins*, 136 S.Ct. 1540, 1549 (2016).  Plaintiffs cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.*  The "sole requirement for standing to sue under [the FHA] is the Art[icle] III minima of injury in fact: that the plaintiff allege that as a result of the defendant's actions he has suffered 'a distinct and palpable injury.'" *Haven Realty Corp. v. Coleman*, 455 U.S. 363, 372 (1982) (quoting *Warth*, 422 U.S. at 501).  However, at the pleading stage the plaintiff must "clearly allege facts demonstrating each [of the three] element[s]." *Spokeo*, 136 S. Ct. at 1547 (quotations and citation omitted).

A key component of Article III standing is "traceability, i.e., a causal connection between the injury and the actions" about which a plaintiff complains. *Easter v. American West Financial*, 381 F.3d 948, 961–62 (9th Cir. 2004) (finding that plaintiffs who could not trace injury to a particular defendant did not have standing to sue that defendant).  Thus, in cases "where there are multiple defendants and multiple claims, **there must exist at least one named plaintiff with Article III standing as to each defendant and each claim**—but a single named plaintiff who can meet these criteria will suffice[.]" *Reniger v. Hyundai Motor America*, 122 F.Supp.3d 888, 895 (N.D. Cal. 2015).

Defendants argue that Plaintiffs still fail to allege a distinct injury sufficient to establish standing as to any of the named State, City, or County Defendants.  (*See* City Mot. 5.)  Although the Court agrees with Defendants that many of Plaintiffs' purported injuries are problematic for standing purposes, the FAC sufficiently pleads facts (assuming those facts are true) to confer standing for the FHA claim as to the City of Los Angeles, City Defendant Da Broi, County Defendants, and State Defendants.

       a.    <u>Plaintiffs Sufficiently Allege Article III Standing to Bring their FHA Claim Against the City of Los Angeles, City Defendant Da Broi, and County Defendants</u>

The Court finds that the misdemeanor charges filed against Plaintiff Vardui by the City are at least sufficient to confer standing to assert their FHA claim against  the City of Los Angeles and City Defendant Da Broi.

The majority of the FAC, like the original complaint, centers around numerous investigations conducted by Defendants concerning the licensing and conditions of Rosie's Garden and Golden Gate.  (*See generally* FAC.)  Defendants made several visits to Plaintiffs' facilities, sent orders to comply to Vardui, Golden Gate, and Rosie's Garden, cited Plaintiffs for fire safety and licensing violations, and repeatedly requested that Plaintiffs deliver a certificate of occupancy to the appropriate officials. (FAC 8-10.)   Following these investigations, the City of Los Angeles (specifically, the Office of the City Attorney) filed misdemeanor criminal charges against Plaintiff

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

**CASE NO.:  CV 18-08093 SJO (AGRx)**          **DATE: May 1, 2019**

Vardui for "not having procured a public health license and permit" in violation of the Los Angeles County Code and for purportedly violating the City fire code.  (FAC ¶ 60.)

In the instant case, **Plaintiffs need to show that Defendants "interfered with the housing rights of the [disabled] and that, as a result, [Plaintiffs] suffered an actual injury."**  *San Pedro Hotel Co., Inc. v. City of Los Angeles*, 159 F.3d 470, 475 (9th Cir. 1998).  "An allegation of future injury may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur."  *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) (citation and internal quotation marks omitted).  But where a plaintiff "has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest ... and there exists a credible threat of prosecution thereunder, he 'should not be required to await and undergo a criminal prosecution as the sole means of seeking relief.'"  *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) (quoting *Doe v. Bolton*, 410 U.S. 179, 188 (1973)).

The FAC contends that the City's decision to file criminal charges against Plaintiff Vardui was "harassment" and based upon "the affidavit and report prepared by Defendants Da Vroi [City Defendant] and LeCavalier [County Defendant]" following their inspections of Plaintiff Vardui's properties.  (FAC ¶¶ 58, 60.)  Here, Plaintiffs do not contest the constitutionality of the actual statute or codes for which Vardui is charged with violating, but instead appear to contend that the actions taken by the City of Los Angeles, Da Vroi, and LeCavalier constitute an interference with the housing rights of the disabled in violation of the FHA.  (FAC ¶ 72.); *see* 42 U.S.C. § 3617 ("[It is] unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by ... [§ ] 3604 [of the FHA].").  In the instant case, the FAC alleges that Plaintiff Vardui engaged in a protected activity by continuing to provide housing for his disabled residents so that the residents "would not end up homeless."  (FAC ¶ 49.)

As alleged, the misdemeanor charges filed against Plaintiff Vardui constitute a credible threat of prosecution to support an "imminent" injury fairly traceable to the challenged conduct undertaken by the City of Los Angeles, City Defendant Da Vroi, and County Defendant LeCavalier.  *See Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009) (holding that the court "assume[s] plaintiff's factual allegations to be true and draw[s] all reasonable inference in his favor" in deciding a facial attack on the subject matter jurisdiction of the district court).  Thus, the Court finds that Plaintiffs have properly alleged an injury in fact for the purposes of Article III standing on the face of the FAC against the City of Los Angeles, City Defendant Da Vroi, and County Defendants based upon the purported actions undertaken by both County and City officials.

However, the threshold constitutional standing requirement mandates that Plaintiffs sufficiently allege Article III standing as to each named Defendant for each claim, and thus Plaintiffs must also plead facts establishing an injury in fact against City Defendants Ralph M. Terrazas, Linsey Pellegrini, and the remaining State Defendants as named defendants in their suit.  *See, e.g. Senne v. Kansas City Royals Baseball Corp.*, 114 F.Supp.3d 906, 913 (N.D. Cal. 2015) (noting

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| Priority | ____ |
| Send | ____ |
| Enter | ____ |
| Closed | ____ |
| JS-5/JS-6 | ____ |
| Scan Only | ____ |

**CASE NO.:** <u>CV 18-08093 SJO (AGRx)</u>　　　　**DATE:** <u>May 1, 2019</u>

that Article III standing requires "for every named defendant there [must] be at least one named plaintiff who can assert a claim directly against that defendant") (internal quotation and citation omitted); *Reniger v. Hyundai Motor America*, 122 F. Supp. 3d 888, 895 (N.D. Cal. 2015) ("[W]here there are multiple defendants and multiple claims, there must exist at least one named plaintiff with Article III standing as to each defendant and each claim[.]").

> b.　<u>Plaintiffs Fail to Allege an Injury in Fact Sufficient to Establish Standing to Assert their FHA Claim Against City Defendants Terrazas and Pellegrini</u>

As to the remaining named City Defendants, the FAC fails to adequately establish Article III standing to support their FHA claim against City Defendants Terrazas and Pellegrini.

Here, Plaintiffs are suing Defendant Terrazas in his official capacity as Chief of the Los Angeles Fire Department and Defendant Pellegrini in her official capacity an "inspector of the LAFD." (FAC ¶¶ 28, 30.) Although the FAC states that Defendant (and LAFD employee) Da Broi's affidavit and report resulted in formal criminal charges being filed against Plaintiff Vardui, Plaintiffs fail to plead any facts showing Defendant Terrazas has caused, or will imminently cause, harm to them as the LAFD Fire Chief. (FAC ¶ 60.) Unlike the allegations directed at Defendant Da Broi, the FAC does not allege that Terrazas played a role in any of the investigations mentioned or that he enacted procedures or regulations which either directly or indirectly led to the City's formal criminal complaint against Vardui. In fact, the FAC mentions Defendant Terrazas only once to describe his occupation, and is otherwise devoid of any reference to either his name or title in conjunction with allegations to support any purported Article III injury in fact. (*See* FAC ¶ 28.) Although Plaintiffs have adequately plead facts to show they have standing to sue Defendant Da Broi in his official capacity, and therefore the City of Los Angeles, the Court finds Defendant Terrazas to be an improper Defendant this case pursuant to the FAC's failure to allege **any** facts implicating him in the events of the instant case.

The Court also finds no injury in fact as a result of any action taken by City Defendant Pellegrini. The FAC claims that Golden Gate was forced to pay "monthly recurring costs" to "retain[ ] the services of ADT Home Security" to install a 24-hour monitoring system in its house as a direct result of the citation Defendant Pellegrini delivered to Golden Gate for a fire safety violation. (FAC ¶ 47.) However, the Court finds no indication that this citation plausibly led to or required the actions taken by Golden Gate to retain ADT's services or install any type of security system in the home. Here, the FAC states that the fire safety violation merely alleged that Golden Gate was in an "unsafe condition and that a Certificate of Occupancy must be obtained by LADBS." (FAC ¶ 46.) Plaintiffs' vague summary of the citation's requirements fails to show that the monetary costs Golden Gate incurred for **either** the security system **or** the placement of fire extinguishers within the house were fairly traceable to Defendants' actions. *See Maya v. Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011) ("To survive a motion to dismiss for lack of constitutional standing, **plaintiffs must establish a 'line of causation' between defendants' action and their alleged harm** that is more than 'attenuated.'") (citing *Allen v. Wright*, 468 U.S. 737, 758 (1984)).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority        _____
Send            _____
Enter           _____
Closed          _____
JS-5/JS-6       _____
Scan Only       _____

**CASE NO.:**  <u>CV 18-08093 SJO (AGRx)</u>        **DATE:** <u>May 1, 2019</u>

As outlined by the FAC, the only requirement included in the citation was that Golden Gate obtain a Certificate of Occupancy from LADBS.  (FAC ¶ 46.)  However, Plaintiffs fail to plead facts showing that they attempted to obtain this credential, **or** that they suffered an injury in fact in any purported effort to comply with this requirement.  (FAC ¶ 46.)  Instead, the Court finds that the alleged costs associated with the retainment of security services and placement of fire extinguishers were, at best, self-inflicted injuries by Golden Gate onto itself based on a "fear[ ] of hypothetical future harm" not fairly traceable to the alleged citation that only required it the obtain a Certificate of Occupancy.  *Clapper v. Amnesty Intern. U.S.A.*, 568 U.S. 398, 416 (2013).  Thus, these injuries are not fairly traceable to Defendant Pellegrini's conduct and insufficient to satisfy the threshold requirements of standing to include him as a City Defendant in the instant action.  In sum, the City Defendants for which Plaintiffs have properly alleged Article III standing to assert their FHA claim against are the City of Los Angeles and Defendant Da Broi.

c.    <u>Plaintiffs Sufficiently Allege an Injury in Fact to Assert Their FHA</u>
<u>Claim Against State Defendants</u>

The FAC claims that Defendants Shanahan and Alvarez stopped a person from entering Golden Gate and "sent back that person to the referring nursing care center" from which they came.  (FAC ¶ 62.)  This purportedly resulted in Golden Gate and Plaintiff Vardui incurring "monetary damages in terms of lost income from the person who was referred to them as a paying tenant."  (FAC ¶ 63.)  State Defendants contend that it would be an impermissible "leap" to assume this referral would have become a "paying Golden Gate resident." (State Opp. 21.)  The Court disagrees. For purposes of Article III standing, a causal chain "does not fail simply because it has several 'links,' provided those links are 'not hypothetical or tenuous' and remain 'plausible.'"  *Maya v. Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011) (quoting *Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835, 849 (9th Cir. 2002)).  Because the "concept of standing under the FHA is broad," the Court finds that the monetary damages from purported lost income are a concrete and particularized injury in fact which could have plausibly been caused by Defendants Shanahan and Alvarez's conduct.  *Pack v. Fort Washington*, 689 F.Supp.2d 1237, 1242 n. 1 (E.D. Cal. 2009).

As to State Defendant MaryJo Schnitzer, Plaintiffs claim that she provided information for the "application of [a] search warrant" executed by the California Department of Justice which resulted in property damage at Golden Gate.  (FAC ¶ 68.)  Although the search warrant was executed by a third party unrelated to the instant action, the FAC adequately pleads facts showing, at a minimum, that the actions taken by Defendant Schnitzer to provide information for the application of the search warrant were fairly traceable to the costs and property damage incurred.  The Court emphasizes, however, that although "general factual allegations of injury resulting from the defendant's conduct may suffice" to establish an injury in fact for standing purposes, the same allegations of injury may not be sufficient to survive a 12(b)(6) motion to dismiss for failure to state a claim.  *See Maya*, 658 F.3d at 1067-68; *In re Vizio, Inc., Consumer Privacy Litig.*, 238 F. Supp. 3d 1204, 1214-16 (C.D. Cal. 2017).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

**CASE NO.:** <u>CV 18-08093 SJO (AGRx)</u>      **DATE:** <u>May 1, 2019</u>

Thus, the Court concludes that the allegations in the FAC are sufficient to establish the threshold requirements for Article III standing for Plaintiffs' FHA claim against State Defendants.

        d.   <u>Conclusion as to Article III Standing for Plaintiffs' FHA Claim</u>

In sum, the Court finds that Plaintiffs have plead facts demonstrating a concrete and particularized injury sufficient to establish Article III standing to assert their FHA claim against all named Defendants, with the exception of City Defendant Ralph M. Terrazas and City Defendant Linsey Pellegrini. Thus, Defendants Terrazas and Pellegrini are no longer considered party defendants to Plaintiffs' FHA claim, and are dismissed on standing grounds.

      2.   <u>Article III Standing for Plaintiffs' ADA Claim</u>

The Court ultimately finds that the FAC adequately alleges an injury in fact sufficient to confer Article III standing as to their ADA claim.

The Supreme Court has instructed the courts to "take a broad view of constitutional standing in civil rights cases, especially where, as under the ADA, private enforcement suits are the primary method for obtaining compliance with the Act." *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1039 (9th Cir. 2008) (quotation and citation omitted). Under Title II of the ADA, a "qualified individual with a disability" cannot, "by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. As noted by the Court in its prior order dismissing Plaintiffs' original complaint with leave to amend, Plaintiffs must prove that they suffered an injury in fact as a result of Defendants' purported violation of the ADA, that Defendants' conduct caused this injury-in-fact, and that a favorable decision of this Court would redress the injury in fact. *See Pickern v. Holiday Quality Foods, Inc.*, 293 F.3d 1133, 1138 (9th Cir. 2002). To seek prospective injunctive relief, Plaintiffs must also show "a real and immediate threat of repeated injury" in the future. *Id. See Fortune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1081 (9th Cir. 2004)*; Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011).

Title II of the ADA includes an anti-retaliation provision which states, in relevant part: "No private or public entity shall coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by the Act or this part." 28 C.F.R. § 35.134.

Here, Plaintiffs allege that they were harassed, intimidated, and retaliated against by Defendants for "keep[ing] the doors of [Golden Gate] open so that its disabled residents would not end up homeless." (FAC ¶ 49.) Although many of the purported injuries asserted in the FAC are largely insufficient to meet the threshold standing requirements, Plaintiffs have sufficiently alleged that Plaintiff Vardui suffered a concrete and particularized injury to confer standing for its ADA claim against the City of Los Angeles, City Defendant Da Broi, and County Defendant LeCavalier. (FAC

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

**CASE NO.:**  <u>CV 18-08093 SJO (AGRx)</u>        **DATE:** <u>May 1, 2019</u>

¶¶ 60-61.) For the same reasons the Court outlined above for Plaintiffs' FHA claim, Plaintiff Vardui suffered an imminent threat of prosecution sufficient to allege a threatened injury in fact when the City filed formal criminal charges against Vardui as a result of Defendants Da Broi and LeCavalier's reports.  Because the FAC contends that the actions undertaken by the City, Da Broi, and LeCavalier were retaliatory for purposes of a Title II ADA retaliation claim, Plaintiffs have standing to bring their claim against those named City and County Defendants.

As with the FHA claim, the allegations regarding purported income loss as a result of State Defendants turning away a referral who arrived at Golden Gate are likewise sufficient to establish an Article III injury in fact for Plaintiffs to have standing to bring their ADA claim against State Defendants.  However, as with the FHA claim, Plaintiffs likewise fail to establish Article III standing to assert their ADA claim against City Defendants Terrazas and Pellegrini for the same reasons mentioned above.   The FAC is devoid of any facts implicating Terrazas in any the events described to meet either of the three elements required to establish Article III standing.  Further, the injuries Plaintiffs allege were caused by Defendant Pellegrini's investigation and resulting citation related to Golden Gate's retainment of ADT services and placement of fire extinguishers are not fairly traceable to any conduct undertaken by Pellegrini and thus fail to establish the requisite causation for standing purposes.

          a.    <u>Conclusion as to Plaintiffs' ADA Claim</u>

In sum, the Court finds that Plaintiffs have sufficiently alleged injuries in fact to establish Article III standing for their ADA claim against all named Defendants in this action with the exception of City Defendants Ralph M. Terrazas and Linsey Pellegrini.  Because Plaintiffs have failed to establish standing as to both defendants for their FHA and ADA claims, Defendants Terrazas and Pellegrini are no longer considered party defendants to this action, and are dismissed on standing grounds.

          3.    <u>Conclusion: Plaintiffs Have Standing to Assert Both Their FHA and ADA Claims</u>

Accordingly, the Court **GRANTS IN PART** City Defendants' Motion to dismiss for lack of standing as to Defendants Terrazas and Pellegrini for both the FHA and ADA claims and **DENIES IN PART** City Defendants' Motion insofar as it moves to dismiss Plaintiffs' FHA and ADA claims as to the remaining City Defendants for lack of standing.  Further, the Court **DENIES** County and State Defendants' Motions to dismiss insofar as they move to dismiss Plaintiffs' FHA and ADA claims against them for lack of standing.

        D.    <u>Dismissal for Failure to State a Claim Under Rule 12(b)(6)</u>

The Court now addresses the merits of Plaintiffs' FHA and ADA claims.  All Defendants move to dismiss Plaintiffs' FAC for failure to state a claim upon which relief can be granted under Rule 12(b)(6).  (*See* City Mot. 8; County Mot. 5; State Mot. 27.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

**CASE NO.:  CV 18-08093 SJO (AGRx)**          **DATE: May 1, 2019**

The fact that a plaintiff may allege facts that, at the pleading stage, satisfy the requirements for Article III standing does not mean these same facts would be sufficient to state a claim.  *See Doe v. Chao*, 540 U.S. 614, 624-25 (2004); *In re Facebook Privacy Litig.*, 791 F.Supp.2d 705, 712 n.5 (N.D. Cal. 2011) (quoting *Doe*, 540 U.S. at 624-25).

      1.    <u>Plaintiffs Fail to State a Claim for Violation of the FHA</u>

Under the FHA, a plaintiff may file, among other things, claims for disparate treatment ("intentional discrimination"), disparate impact, and/or retaliation.  *See* Here, Plaintiffs have merely restated various sections of the Fair Housing Act in their FAC without any direct reference to a specific claim or claims they wish to pursue against Defendants.  (FAC ¶¶ 71-74.)  The FAC alleges that Defendants' actions as described in the FAC constitute:

    (1)    discrimination in the sale or rental, or otherwise making unavailable or denying, a dwelling because of disability in violation of 42 U.S.C. § 3604(f)(1);

    (2)    discrimination in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling because of disability in violation of 42 U.S.C. § 3604(f)(2);

    (3)    a refusal to make reasonable accommodation in rules, policies, practices or services when such accommodation may be necessary to afford a person an equal opportunity to use and enjoy a dwelling in violation of 42 U.S.C. § 3604(f)(2)(B); and

    (4)    interference with the rights of persons in the exercise or enjoyment of, on account of their having exercised or enjoyed, or on account of their having aided or encouraged persons with disabilities in the exercise or enjoyment of rights granted or protected by the FHA in violation of 42 U.S.C. § 3617.

(*See* FAC ¶ 72.)  The Court fails to understand why Plaintiffs chose to recite these excerpts of the Act—even various subsections which are clearly not applicable to this case, *see* 42 U.S.C. § 3604(f)(2) (prohibiting discrimination in the **terms, conditions, or privileges of sale or rental of a dwelling** on the basis of disability which Plaintiffs fail to allege as to **any** named Defendants)—instead of specifically instructing the Court as to the desired causes of action under the FHA that they wish to pursue (i.e., intentional discrimination, disparate impact, retaliation, etc.). Thus, the Court will address each of the potential claims Plaintiffs could have alleged under the FHA to discern which claim or claims Plaintiffs actually intended to assert in their pleadings.

      a.    <u>Rosemary R. Lewis is the Only Plaintiff Considered "Handicapped" Within the Meaning of the FHA</u>

As a threshold matter, the Court addresses Defendants' arguments concerning the resident

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

**CASE NO.:**  <u>CV 18-08093 SJO (AGRx)</u>          **DATE:** <u>May 1, 2019</u>

Plaintiffs' status as "handicapped" individuals within the meaning of the FHA.  Here, the FAC asserts that Plaintiffs Judie Smith, Nancy Moody, Jaymelle Hinton, Sargen Poureshagh, and Rosemary R. Lewis are all disabled[1] and were engaged in a protected activity when they used the supportive housing provided by Rosie's Garden and Golden Gate.  (FAC ¶¶ 4-5.) City Defendants argue that Plaintiffs have only alleged "various medical infirmities or recovering drug addiction" which are insufficient to establish a handicap or disability under the FHA.  (City Mot. n.2 at 8).

Under the FHA, a "handicap" is "(1) a physical or mental impairment **which substantially limits one or more of such person's major life activities**; (2) a record of having such an impairment; or (3) being regarded as having such an impairment, but such term does not include current, illegal use of or addiction to a controlled substance."  42 U.S.C. § 3602(h).  A "physical or mental impairment" is any mental or psychological disorder, including "emotional illness."  24 C.F.R. § 100.201(a) (defining terms under the FHA).  "Major life activities means functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working."  24 C.F.R. § 100.201(b).  Courts in the Ninth Circuit have previously held that, in the context of the Americans with Disabilities Act ("ADA"), which uses a definition of "disability" that is identical to the FHA's definition of "handicap," **a plaintiff's disability must be pled "with some factual specificity."**  *Bresaz v. Cty. of Santa Clara*, 136 F. Supp. 3d 1125, 1135 (N.D. Cal. 2015); *see also Giebeler v. M & B Assocs.*, 343 F.3d 1143, 1147–49 (9th Cir. 2003) (finding that ADA case law is applicable to an analysis under the FHA).  Plaintiffs' FAC refers to a variety of the resident Plaintiffs' potential "handicaps" which it claims entitles them to protection under the FHA. The Court discusses each alleged "handicap" in turn.

The FAC alleges the following disabilities for each resident Plaintiff: (1) Judie Smith has been "diagnosed with Bi-Polar/Schizophrenia" and "manages her daily activities and takes her medication regularly on her own;" (2) Nancy Moody suffers from "migraines and panic disorder;" (3) Jaymelle Hinton is a "recovering alcoholic" diagnosed with "clinical depression" who attends therapy five days a week as part of an intensive outpatient program and "takes his own regular medications;" (4) Sargen Poureshagh is a "recovering alcoholic" taking medication for "asthma, anxiety, and high blood pressure" whose only source of income is the "monthly benefit" of $1000 he receives from the County; (5) Rosemary R. Lewis suffers from "severe lumbar pain" which forces her to walk with a cane.  (FAC ¶¶ 15-20.)

First, the mental illnesses alleged by Plaintiffs Smith, Moody, Hinton, and Poureshagh—specifically, bi-polar disorder, schizophrenia, panic disorder, clinical depression, and

---

[1]  Although the FHA uses the terms "handicap" and "handicapped," 42 U.S.C. § 3604(f), the Court uses the preferred terms "disability" and "disabled," unless referring to the statutory language.  *Cf. Helen L. v. DiDario*, 46 F.3d 325, 330 n.8 (3d Cir. 1995) ("[I]ndividuals with disabilities find the term 'handicapped' objectionable.").  The Ninth Circuit treats the terms interchangeably.  *Giebeler v. M & B Assocs.*, 343 F.3d 1143, 1146 n.2 (9th Cir. 2003).

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:**  CV 18-08093 SJO (AGRx)          **DATE:** May 1, 2019

anxiety—are all "mental impairments" within the meaning of the FHA.  See Castellano v. Access Premier Realty, Inc., 181 F.Supp.3d 798, 805 (E.D. Cal. 2016) (considering anxiety disorder, depression, and psychotic disorder as "mental impairments" under the FHA).  However, the FAC must show each Plaintiffs' alleged mental impairment "**substantially limits one or more of such person's major life activities**" in order for the resident Plaintiffs to be considered "handicapped" within the meaning of the FHA.  See 42 U.S.C. § 3602(h).  Here, Plaintiffs fail to plead facts showing that any of these mental impairments substantially limited their ability to "car[e] for one's self, perform[ ] manual tasks, walk[ ], see[ ], hear[ ], speak[ ], breath[e], learn[ ]" or "work [ ]."  24 C.F.R. § 100.201(b) (outlining what are considered "major life activities" under the FHA).  In fact, the FAC fails to show that these Plaintiffs were affected in **any** way by their purported mental impairments other than the fact that they lived in the residential facilities operated by Golden Gate and Rosie's Garden.

Here, the FAC expressly contends that Judie Smith "manages her daily activities and takes her medication regularly on her own."  (FAC ¶ 16.)  This statement, without more, is wholly deficient in showing that any of her daily activities are substantially impaired by her bi-polar disorder or schizophrenia.  The Court is therefore unable to consider Judie Smith "handicapped" within the meaning of the FHA.  As with Smith, the FAC likewise fails to plead specific facts showing the major life activities of Plaintiffs Moody, Hinton, and Poureshagh have been substantially limited by their purported mental illnesses.  The FAC's vague statements detailing the length of each Plaintiffs' residency at Golden Gate fail to show how any of their mental impairments has either substantially affected their living conditions or their ability to care for themselves.  (See FAC 4.) The FAC's vague assertions that each Plaintiff is able to "take [their] medications" on their "own" likewise fails to show that taking daily medications "substantially impairs" their major life activities or that the referenced medications are even prescribed **for** their mental illnesses.  Although Hinton purportedly attends therapy five days a week at a local hospital and Poureshagh's only source of income comes in the form of "monthly benefit[s]" provided by the County, the Court finds no indication that either Plaintiff is unable to perform or partake in major life activities, especially considering the FAC fails to even allege Poureshagh receives benefits **because of** his disability **or** because he is unable to work.  (FAC ¶ 19.)  Cf. Sinisgallo v. Town of Islip Housing Authority, 865 F. Supp. 2d 307, 338 (E.D. N.Y. 2012) ("As a general matter, in most cases, individuals who meet the definition of disability for purposes of receiving SSI or SSDI benefits also qualify as disabled under the federal disability statutes.").  On balance, Plaintiffs fail to plead specific facts showing that Plaintiffs Judie Smith, Nancy Moody, Jaymelle Hinton, and Sargen Poureshagh are "handicapped" within the scope of the FHA.

As to Plaintiff Rosemary R. Lewis, the Court finds sufficient facts to support her status as a "handicapped" individual for purposes of the protections granted by FHA.  The FAC asserts that she suffers from "severe lumbar pain" and "walks with a cane." (FAC ¶ 20.)  Although this statement is vague, the Court finds that Plaintiffs have at least made the minimum showing required to sufficiently allege that Lewis suffers from a "physical impairment" which "substantially impairs" her ability to walk.  See 42 U.S.C. § 3602(h);  24 C.F.R. § 100.201(b).  See also P.P. v.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority        ____
Send            ____
Enter           ____
Closed          ____
JS-5/JS-6       ____
Scan Only       ____

CASE NO.:  CV 18-08093 SJO (AGRx)          DATE: May 1, 2019

*Compton Unified Sch. Dist.*, 135 F. Supp. 3d 1098, 1111 (C.D. Cal. 2015) ("[T]he term 'substantially limits' shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA. 'Substantially limits' is not meant to be a demanding standard.") (quoting 29 C.F.R. § 1630.2(j)(1)(I)) (internal quotations omitted).

In sum, the Court holds that Plaintiff Lewis is the only named Plaintiff in the instant case who has plead sufficient facts to show she is "handicapped" for the purposes of both FHA and ADA claims. *See Bragdon v. Abbott*, 524 U.S. 624, 631 (1998) ("[T]he ADA's definition of disability is drawn almost verbatim from the definition of "handicapped individual" included in the Rehabilitation Act of 1973 ... and the definition of "handicap" contained in the Fair Housing Amendments Act of 1988[.]") (citations omitted).

> b.  <u>Plaintiffs Fail to State a Claim for Intentional Disability Discrimination in Violation of 42 U.S.C. §§ 3604 (f)(1) & (f)(2)</u>

The Court now turns to the merits of Plaintiffs' claim for intentional discrimination under 41 U.S.C. §§ 3604 (f)(1) & (f)(2).  To state a claim under 42 U.S.C. § 3604 for intentional discrimination, Plaintiffs must allege that "(1) they have rights protected under the Fair Housing Act; (2) defendants have engaged in discriminatory conduct; and (3) as a result of defendants' discriminatory conduct, [Plaintiffs have] suffered a distinct and palpable injury." *Hicks v. Makaha Valley Plantation Homeowners Assoc.*, 2015 U.S. Dist. LEXIS 85101, at *25 (D. Haw. June 30, 2015) (citing *Harris v. Itzhaki*, 183 F.3d 1043, 1051 (9th Cir. 1999)).  "To state a claim for disparate treatment, Plaintiff must provide more than mere conclusory allegations of Defendants' intent to discriminate." *Garcia v. Country Wide Fin. Corp.*, 2008 U.S. Dist. LEXIS 106675, at *21 (C.D. Cal. Jan. 17, 2008) (citing *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007)).  Plaintiffs "need not prove a prima facie case" to survive a motion to dismiss under 12(b)(6), "but must still plead the general disparate impact [or disparate treatment] elements" to make the claim "facially plausible." *Thomas v. San Francisco Housing Auth.,* 2017 WL 878064, at *4 (N.D. Cal. Mar. 6, 2017) (quoting *Borja-Valdes v. City and County of San Francisco*, 2015 WL 5522287, at *8 n.5 (N.D. Cal. Sept. 18, 2015)).

Following Plaintiffs' threadbare recital of the FHA, the FAC alleges that "Defendants acted intentionally, willfully, and in the [sic] disregard for the rights of others" by engaging in discriminatory conduct in violation of the provisions of the Act stated in Plaintiffs' claim.  (FAC ¶ 73.)  However, the FAC fails to specify any specific conduct Defendants engaged in that would constitute intentional disability discrimination in violation of the FHA **or** even which particular disabilities might form the basis of Defendants' discrimination.  The lion's share of Plaintiffs' FAC centers around numerous investigations conducted by Defendants in which they inquired into the health, safety, and/or licensing obligations of Golden Gate and Rosie's Garden.  (*See generally* FAC.)  The Court is unpersuaded that repeated, and largely cordial, requests by City, County, and State officials for Plaintiff Vardui to acquire the applicable permits and certificates of occupancy for her facilities **to ensure their safety as required by law** constitute either intentional

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

**CASE NO.:  CV 18-08093 SJO (AGRx)**           **DATE: May 1, 2019**

discrimination or "constant harassment and intimidation" in violation of any provision of the FHA. (FAC 7-9.)

Plaintiffs appear to contend that a **single** excerpt from a report prepared by State officials pursuant to a prior investigation into Rosie's Garden which stated that there were "no health and safety issues present" **in December of 2016** somehow proves that the subsequent investigations **conducted by different City, County, and State agencies throughout the end of 2017** were frivolous and acts of intentional discrimination because of any individual's purported disabilities. (FAC 7-9.)  Plaintiffs fail to allege sufficient factual matter to permit the inference that Defendants' actions were more likely than not motivated by discriminatory criteria—specifically, that any residents or Plaintiffs were intentionally denied privileges given to other residents of Golden Gate, Rosie's Garden, or other group homes investigated by Defendants **because of** their alleged disabilities (in this case, Plaintiff Lewis's).  *See Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279–80 (1979) (holding that equal protection clause intentional discrimination requires **"a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group"**).

Moreover, Plaintiffs fail to allege that, throughout the course of these investigations, either Rosie's Garden or Golden Gate were ever properly licensed or in compliance with the local fire safety code.  Plaintiffs allege that they are supportive housing and not a residential care facility for the elderly, and thus do not need to be licensed or limited to six residents as set forth in California Health and Safety Code sections 1504.5 (a)(1) and (c)(2).  (FAC 2.)  Plaintiffs also assert that they do not provide medical services to their residents and, according to them, their residents  are "independent" and "obtain their care from third parties."  (FAC ¶¶ 3, 13.)  Although certain state permit and licensing requirements prescribed under California law do not apply to "independent living arrangement[s] or supporting housing ... for individuals with disabilities who are receiving community living support services,"  Cal. Health & Safety Code § 1504.5,  the housing provided by Rosie's Garden and Golden would only fall within this narrow exception if the facility is a "house, institution, hotel, homeless shelter, or other similar place that supplies board and room only ... **provided that no resident thereof requires any element of care, as determined by the department.**"  Cal. Health & Safety Code § 1505.  Under this code section, "the department" means the California State Department of Social Services.  Cal. Health & Safety Code § 1502(21)(b).  Here, the FAC describes many of its residents as "persons with disabilities" who require medications, medical care from third parties, and access to federal disability benefits. (*See generally* FAC.)  As prescribed under § 1505, the named Defendants working for the California Department of Social Services retain the discretion to determine what constitutes "any element of care" that Plaintiffs' residents may require which would render it necessary to be licensed in accordance with California law.  Thus, in the instant case, Plaintiffs' vague assertion that their facilities fall within this exception fails to show that the State Defendants could not have permissibly concluded otherwise **or** that such a conclusion would constitute intentional discrimination because of the residents' purported disabilities.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority          \_\_\_\_
Send              \_\_\_\_
Enter             \_\_\_\_
Closed            \_\_\_\_
JS-5/JS-6         \_\_\_\_
Scan Only         \_\_\_\_

**CASE NO.:  CV 18-08093 SJO (AGRx)**      **DATE: May 1, 2019**

Further, even if Plaintiffs' facilities **did** fall within the exception, City Defendants note that the City of Los Angeles and its Fire Inspectors "do not issue or enforce the State Residential Care Facility permits or regulations." (City Mot. 14.)  The Court finds that Defendants' actions, investigations, issuance of citations, and filing of criminal charges as outlined in the FAC were unrelated to the narrow State regulations that Plaintiffs rely upon to claim they are exempt from any such enforcement.  Regardless, Plaintiffs' housing facilities—just like any other facility providing the same type of supportive housing—are still subject to the health and safety requirements mandated by the City and County Fire and Municipal Codes, which Defendants repeatedly requested that Plaintiff Vardui properly comply with.  (*See* FAC 7-10; City Mot. 9-10.)  In light of the fact that Rosie's Garden and Golden Gate were subject to, and purportedly in violation of, the laws Defendants are charged with enforcing, the Court is unpersuaded that the mere fact that these investigations occurred shows that Defendants acted with the intention to discriminate **because of** the residents' purported disabilities.

In sum, the Court finds that Plaintiffs have failed to plausibly plead a claim for intentional discrimination under the FHA against any named Defendants.

       c.      <u>Plaintiffs Fail to State a Claim for Failure to Provide Reasonable Accommodations in Violation of 42 U.S.C. § 3604(f)(2)(B)</u>

Next, in the case of an alleged failure to make reasonable accommodations, Plaintiffs must plead facts plausibly showing all of the following elements: "(1) that the plaintiff or his associate is handicapped within the meaning of 42 U.S.C. § 3602(h); (2) that the defendant knew or should reasonably be expected to know of the handicap; (3) that accommodation of the handicap may be necessary to afford the handicapped person an equal opportunity to use and enjoy the dwelling; (4) that the accommodation is reasonable; and (5) that defendant refused to make the requested accommodation."  *DuBois v. Ass'n of Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175, 1179 (9th Cir. 2006).

Here, the FAC fails to plead facts demonstrating that any of the named Defendants engaged in conduct which resulted in the failure to provide a reasonable accommodation to any purportedly handicapped residents at Golden Gate, Rosie's Garden, or otherwise.  Even if Plaintiffs had plead facts showing a reasonable accommodation was necessary as to Plaintiff Lewis—the only resident considered "disabled" for purposes of the FHA and ADA claims in this case—and that Defendants somehow had a duty to provide such an accommodation during the course of their investigations, there is **no** evidence that any Plaintiffs or residents either requested an accommodation which the City, County, or State Defendants should have provided **or** that Defendants somehow "refused" to fulfill such a request.  *Dubois*, 453 F.3d at 1179.

The Court therefore concludes that Plaintiffs have failed to state a claim against Defendants for a failure to make reasonable accommodations in violation of the FHA.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority    ____
Send        ____
Enter       ____
Closed      ____
JS-5/JS-6   ____
Scan Only   ____

CASE NO.:  __CV 18-08093 SJO (AGRx)__          DATE: __May 1, 2019__

      d.     <u>Plaintiffs Fail to State a Claim for Retaliation in Violation of 42 U.S.C. § 3617</u>

The Court next addresses Plaintiffs' final claim for retaliation in violation of the FHA.  Section 3617 of the FHA provides that "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged another person in the exercise or enjoyment of, any right granted or protected" by the FHA.  42 U.S.C. § 3617.  "To state a claim for retaliation under the FHA, a plaintiff must show that: (1) [they] engaged in protected activity; (2) the defendant subjected [plaintiff] to an adverse action; and (3) 'a causal link exists between the protected activity and the adverse action.'"  *Thomas,* 2017 WL 878064, at *5 (quoting *Walker v. City of Lakewood*, 272 F.3d 1114, 1128 (9th Cir. 2001)).

      1.     <u>Plaintiffs Sarafyan Vardui, Golden Gate, Rosie's Garden, and Rosemary R. Lewis Were Engaged in a "Protected Activity"</u>

The Court finds that Plaintiffs Vardui, Golden Gate, Rosie's Garden, and Rosemary R. Lewis are the only Plaintiffs who adequately allege they were engaged in a "protected activity" for the purposes of the first element of their FHA retaliation claim.

In the instant case, Plaintiff Vardui Sarafyan operates the supportive housing provided at the residential properties known as Golden Gate and Rosie's Garden, and is thus engaged in the protected activity of "aid[ing] or encourag[ing]," 42 U.S.C. § 3617, disabled resident Plaintiff Lewis in the exercise of her fair housing rights.  Thus, Plaintiffs Vardui, Golden Gate, and Rosie's Garden have sufficiently alleged they were engaged in a "protected activity" for purposes of the first element of their FHA retaliation claim.

As to the remaining Plaintiffs, the FAC is only able to show that Plaintiff Rosemary R. Lewis is "handicapped" as defined under the FHA.  The Court likewise finds that Lewis was engaged in a "protected activity" when she used and accessed the housing facilities offered to her as a disabled individual at Golden Gate.  However, the FAC fails to provide any evidence showing that the remaining resident-Plaintiffs Smith, Moody, Hinton, and Poureshagh were engaged in any protected activities that fall within the scope of the FHA in light of their failure to allege that they are "handicapped."  Here, Plaintiffs only state facts showing they are residents at the supportive housing facilities provided by Golden Gate and Rosie's Garden, but their residency alone is insufficient to show they "aid[ed] or encourag[ed]" either Plaintiff Lewis or another disabled individual in the exercise of their housing rights granted under the FHA.  42 U.S.C. § 3617.  Thus, the Court concludes that Plaintiffs Smith, Moody, Hinton, and Poureshagh fail to state a claim for retaliation under 42 U.S.C. § 3617.

Accordingly, the Court will only address the remaining elements of the FHA retaliation claim as to Plaintiffs Vardui, Golden Gate, Rosie's Garden, and Lewis.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

CASE NO.:  <u>CV 18-08093 SJO (AGRx)</u>          DATE: <u>May 1, 2019</u>

2.      <u>Plaintiffs Golden Gate, Rosie's Garden, and Vardui Were
        Subject to an Adverse Action</u>

The second element of an FHA retaliation claim requires Plaintiffs to show they were subjected to an "adverse action."  *Thomas,* 2017 WL 878064, at *5.  In the context of a retaliation claim under 41 U.S.C § 3617, an adverse action must be in the form of "coercion, intimidation, threats, or interference."  *Walker*, 272 F.3d at 1128 (citing 42 U.S.C. § 3617).  The term "interference" in the FHA "has been broadly applied to reach all practices which have the effect of interfering with the exercise of rights under the federal fair housing laws."  *Walker*, 272 F.3d at 1129.  "Inference" is "the act of meddling in or hampering an activity or process."  *Id.*  To "coerce" is "to compel to an act or choice by force, threat, or other pressure."  *Id.*  Coercion can include "the application of sanctions or force by a government [usually] accompanied by the suppression of constitutional liberties in order to compel dissenters to conform."  *Id.*  Finally, a "threat" is "an expression to inflict evil, injury, or other damage on another."  *Id.*

Here, Plaintiffs Golden Gate, Rosie's Garden, and Vardui allege that Defendants interfered with their ability to provide housing for disabled individuals—in this case, Plaintiff Lewis—when Defendants investigated their homes, cited Plaintiffs for various housing, licensing, and fire code violations, and  filed criminal charges against Vardui .  (*See generally* FAC.)  Construed broadly, these allegations are sufficient to show Plaintiffs Golden Gate, Rosie's Garden, and Vardui were subject to adverse action by Defendants in the form of their "interference" with Plaintiffs' housing operations.

In contrast, the FAC is devoid of any **specific** facts showing that Plaintiff Lewis was likewise subject to any materially adverse action as a result of Defendants' conduct.  The Court finds no evidence showing that Lewis was present at Golden Gate or Rosie's Garden during the alleged investigations or inspections, and although Plaintiffs claim that they "closed down" Rosie's Garden, the FAC fails to show that Lewis was affected by this closure such that her housing rights were interfered with.  Moreover, the Court is unpersuaded by Plaintiffs' assertion that Defendants' actions somehow forced or required Plaintiffs to shut down Rosie's Garden.  As noted by the FAC, Defendant Alvarez's "Plan of Correction" only required Vardui to "apply for an RCFE license within fifteen (15) days" or "relocate residents who have been deemed in need of care and supervision," and did **not** otherwise require Plaintiffs to close down their facility.  (FAC ¶¶ 65-66.)  Even assuming that Lewis was still a resident of Rosie's Garden at the time of the closure, the FAC likewise fails to show that she was either required to relocate as a resident in need of care or that she was otherwise displaced because of Defendants' actions.  Thus, as to Plaintiff Lewis, the Plaintiffs fail to show she was subject to an adverse action as a result of her engagement in a protected activity as required for an FHA retaliation claim.

However, even if Plaintiffs had sufficiently plead facts showing that Lewis was subject to an adverse action or that her housing rights were "interfered with" in some way, Plaintiffs still fail to show the requisite element of causation for an FHA retaliation claim.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority        ____
Send            ____
Enter           ____
Closed          ____
JS-5/JS-6       ____
Scan Only       ____

**CASE NO.:  CV 18-08093 SJO (AGRx)**              **DATE: May 1, 2019**

3.      Plaintiffs Fail to Show a Causal Link Between the Protected
Activity and Defendants' Conduct

The third and final element to state a claim for retaliation under the FHA requires Plaintiffs to plead sufficient facts showing that "a causal link exists between [their] protected activity and the adverse action" taken by Defendants.    *Walker,* 272 F.3d at 1128.  "To show the requisite causal link, the plaintiff must present evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action."  *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982).  Defendants contend that their actions were taken  "for non-discriminatory health and safety reasons" to "enforce the law," and the FAC fails to show their actions were either caused by or connected to Plaintiffs' engagement in a protected activity.  (City Mot. 9; County Mot. 8.)  The Court agrees.

Here, Plaintiffs contend that they are being "targeted by the Defendants under the pretext that they are enforcing RCFE regulations, but the real motive of the Defendants is to close the Plaintiffs' supportive housing based on discrimination."  (FAC ¶ 9.)  Although the FAC details the events surrounding numerous investigations conducted by Defendants, Plaintiffs fail to show that Defendants' actions were caused or motivated by the fact that Plaintiffs' were providing housing services to the disabled.  Instead, the FAC shows that Defendants' investigations resulted in the issuance of citations or notices stating that Plaintiffs' facilities were "unsafe," in violation of local fire codes, and that Vardui had repeatedly failed to obtain a Certificate of Occupancy as required by law.  (FAC 8-10.)  Plaintiffs fail to contend that these citations or notice were improperly issued, that their facilities were compliant with the codes and not "unsafe" as Defendants reported, or that Vardui had already obtained a Certificate of Occupancy.  Instead, the Court only finds evidence showing Defendants' investigations were motivated by allegations that Plaintiffs' facilities were operating in violation of laws they are charged with enforcing as State, County, and City officials. The FAC provides no evidence that Defendants initiated these investigations **because** Plaintiffs were providing housing to disabled residents.  *Cf. Pacific Shoes Prop., LLC v. City of Newport Beach*, 730 F.3d 1142, 1165 (9th Cir. 2013) ("[The Ninth Circuit has] recognized that it is unlawful discrimination to subject individuals to "the rigors of the governmental or administrative process ... **with an intent to burden, hinder, or punish them by reason of their [membership in a protected class.]**") (citing *Flores v. Pierce*, 617 F.2d 1386, 1391 (9th Cir.1980), *cert. denied*, 449 U.S. 875 (1980)).

Moreover, although Plaintiffs' contend that Vardui's arrest for an unrelated criminal charge for threatening a State official was a "form of retaliation," they fail to plead facts showing the arrest occurred because Vardui provides housing facilities for disabled individuals.  (FAC 9-10.)  The criminal complaint filed against Vardui is likewise insufficient to show a causal link between her protected activity and Defendants' actions.  The criminal complaint filed against Vardui cites numerous violations of City and County regulations for operating a building that has been deemed "unsafe" and a fire hazard under the California Fire Code and for operating without a public health license or permit authorized by the County.  (*See* City Mot. 9-10.)  Plaintiffs fail to plead any facts

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | |
|---|---|
| Priority | ____ |
| Send | ____ |
| Enter | ____ |
| Closed | ____ |
| JS-5/JS-6 | ____ |
| Scan Only | ____ |

CASE NO.:  **CV 18-08093 SJO (AGRx)**          DATE: May 1, 2019

alleging these charges were unfounded or that Plaintiffs are somehow permitted to operate housing facilities deemed unsafe under health and safety regulations solely because they are providing housing for disabled individuals.  As City Defendants note, these regulations apply equally to "all dwellings" for safety purposes, and the Court finds no reason to conclude these charges were instead filed **because of** Plaintiffs' protected activity.  (City Mot. 9-10.)

In sum, the slew of allegations made by Plaintiffs merely show that Defendants investigated and enforced the various laws to Plaintiffs' housing facilities because Plaintiffs violated such laws. Further, the FHA does not require accommodations that "increase a benefit to a handicapped person above that provided by a nonhandicapped person **with respect to matters unrelated to the handicap**."  *Bryant Woods Inn v. Howard Cnty.*, 124 F.3d 597, 604 (4th Cir.1997) (citing *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1226 (11th Cir.2008)).  Thus, although Plaintiffs were engaged in a protected activity, the FHA does not require that Defendants refrain from enforcing health and safety codes with equal force as to Plaintiffs' facilities since such matters are unrelated to the housing protections provided under the FHA and Plaintiffs fail to show Defendants acted for a discriminatory purpose.[2]

In sum, the Court concludes that Plaintiffs fail to show a causal link between Defendants' actions and Plaintiffs' engagement in a protected activity, and their FHA retaliation claim must therefore fail.

      e.      Conclusion as to Plaintiffs' FHA Claim

The Court concludes that Plaintiffs' FHA cause of action fails to state a claim upon which relief can be granted.  Accordingly, the Court **GRANTS** Defendants' Motions to dismiss pursuant to Rule 12(b)(6) and **DISMISSES** Plaintiffs' FHA claim in its entirety.

      2.      Plaintiffs' Fail to State a Claim for Violation of Title II of the ADA

The Court now turns to whether Plaintiffs have successfully stated a claim under Title II of the ADA.  As with their FHA claim, Plaintiffs recite large portions of the ADA provisions without specifically indicating which sections are applicable to the instant case or which individual claims it intends to assert against Defendants.  (*See* FAC 14-15.)  Ultimately, the Court likewise finds that the FAC fails to plead sufficient facts to assert an ADA cause of action.

---

[2]  In their request for relief, Plaintiffs seek to enjoin State and County Defendants from "improperly enforcing the state's California Community Facilities Act."  (FAC 15.)  However, the FAC pleads facts showing only that Defendants sought to enforce various State, City, or County health and safety codes.  The Court finds no evidence showing any of the Defendants enforced or attempted to enforce any provisions of the California Community Facilities Act.  Thus, the Court declines to address this particular request for relief since Plaintiffs fail to show the Act has any bearing on the events at issue.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

CASE NO.:  **CV 18-08093 SJO (AGRx)**          DATE: **May 1, 2019**

       a.       <u>Plaintiffs Fail to State a Claim for Disability Discrimination under Title</u>
                <u>II of the ADA</u>

Title II of the ADA "applies to state and local governments."  *Fortyune v. City of Lomita*, 766 F.3d 1098, 1101 (9th Cir.  2014).  Title II of the ADA provides:

> ... [N]o qualified individual with a disability shall, **by reason of such disability**, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity,[3] or be subjected to discrimination by any such entity.

42 U.S.C. § 12132 (emphasis added); *see, e.g. Cohen v. City of Culver City*, 754 F.3d 690, 694 (9th Cir. 2014) (quoting 42 U.S.C. § 12132).  To state a claim under Title II of the ADA, a plaintiff must plead facts plausibly showing that: "(1) [plaintiff] is a qualified individual with a disability; (2) [plaintiff] was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) this exclusion, denial, or discrimination was by reason of [plaintiff's] disability."  *Cohen*, 754 F.3d at 695.  As to the third requirement, Plaintiffs must show that the exclusion, denial, or discrimination was "**solely by reason of disability**."  *Weinreich v. Los Angeles Cty. Metro. Transp. Auth.*, 114 F.3d 976, 978-79 (9th Cir. 1997) (emphasis added).

       1.       <u>Rosemary R. Lewis Is the Only Plaintiff Who Satisfies the</u>
                <u>Requirements To Be A "Qualified Individual With a Disability"</u>
                <u>Under Title II of the ADA</u>

First, the Court concludes that Plaintiff Lewis is the sole party considered "disabled" to satisfy the first element of a disability discrimination claim under Title II.

As with their FHA claim, Plaintiffs fail to show that any of the resident-Plaintiffs other than Plaintiff Rosemary R. Lewis are "qualified individual[s] with a disability" for purposes of a Title II ADA claim. For purposes of brevity, the Court does not repeat its prior analysis as to each Plaintiffs' alleged disabled status since the terms "handicapped" and "disabled" are analyzed under the same standard for both FHA and ADA claims.  Under the FHA and ADA, a physical or mental

---

[3] The parties generally agree that City, County, and State Defendants each fall within the definition of a "public entity" under the Title II of the ADA.  Although City Defendants' contend that the City officials named in the FAC cannot be sued in the instant case, both public agencies **and public officials acting in their official capacities** are subject to suit under Title II.  *See Miranda B. v. Kitzhaber*, 328 F.3d 1181, 1187 (9th Cir. 2003).  The FAC clearly states that the individual City, County, and State Defendants are being sued in their official capacities, not based upon a theory of individual liability.  (*See* FAC 5-6.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

Priority          ____
Send              ____
Enter             ____
Closed            ____
JS-5/JS-6         ____
Scan Only         ____

CIVIL MINUTES - GENERAL

CASE NO.:  **CV 18-08093 SJO (AGRx)**          DATE: **May 1, 2019**

impairment is a disability if it "substantially limits one or more major life activities of" an individual. 42 U.S.C. § 12102(1)(A) (defining the term "disability" under the ADA); *see also* 34 C.F.R. § 104.3(j)(1)(i) (defining a handicapped person for purposes of Section 504 of the Rehabilitation Act of 1973 ("Section 504" or "the RA") as one who "has a physical or mental impairment which substantially limits one or more major life activities").  *See* 42 U.S.C. § 3602(h);  24 C.F.R. § 100.201(b) (defining "handicap" under the FHA as including "a physical or mental impairment which substantially limits one or more of such person's major life activities").  The ADA likewise includes "learning, reading, concentrating, thinking, [and] communicating," among a non-exhaustive list of "major life activities."  42 U.S.C. § 12102(2)(A); *see Weaving v. City of Hillsboro*, 763 F.3d 1106, 1111 (9th Cir. 2014).

Thus, for the same reasons stated above in its analysis of Plaintiffs' FHA claim, the Court likewise concludes that Plaintiffs Judie Smith, Nancy Moody, Jaymelle Hinton, and Sargen Poureshagh fail to plead facts showing they are "qualified individual[s] with disabilit[ies]" under Title II of the ADA.  *See* 42 U.S.C. § 12132.  *See, e.g., Rodriguez v. John Muir Med. Ctr.*, No. C 09–0731 CW, 2010 WL 1002641, at *2 (N.D. Cal. Mar. 18, 2010) (concluding that plaintiff insufficiently pled a disability under the ADA where plaintiff stated that she "had a disability involving her back" but did not allege facts suggesting substantial impairment due to her disability and did not "illuminate the nature, severity, duration and impact of her disability"); *Kaiser v. Banc of Am. Inv. Servs., Inc.*, 296 F.Supp.2d 1219, 1221 (D. Nev. 2003) (concluding that plaintiff insufficiently pled his alleged disability under the ADA even though plaintiff alleged that defendant regarded him as disabled because "the complaint does not state that Plaintiff was regarded as having an impairment that 'substantially limits' a 'major life activity,' nor does it allege which major life activity is regarded as impaired"); *Sanders v. Arneson Products, Inc.*, 91 F.3d 1351, 1354 n.2 (9th Cir. 1991) ("The ADA defines 'disability' with specificity as a term of art. Hence, a person may be 'disabled' in the ordinary usage sense, or even for purposes of receiving disability benefits from the government, yet still not be 'disabled' under the ADA.").

Accordingly, the Court continues its analysis considering Plaintiff Rosemary R. Lewis as the only qualified individual with a disability in the context of the FAC's ADA claim.

> 2.      Plaintiff Lewis Fails to Show She Was Discriminated Against
>          By a Public Entity Because of Her Disability

In the instant case, Plaintiffs do not assert that Lewis was excluded from, denied the benefits of, or subjected to discrimination by the specific text of any particular law, regulation, or code referenced in the FAC.  Rather, Plaintiffs contend that Defendants "enforc[ed] the City of Los Angeles' fire, building, and other codes **in a manner** than discriminates because of disability in violation of [the ADA]."  (FAC ¶ 4.)

For purposes of the second element of a Title II disability discrimination claim, the Court begins by noting that the phrase "services, programs, or activities" encompasses any action taken by a

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

CASE NO.:   <u>CV 18-08093 SJO (AGRx)</u>                    DATE: <u>May 1, 2019</u>

public entity.  42 U.S.C. § 12132.  The ADA does not define the "services, programs, or activities of a public entity," but  Section 504 of the Rehabilitation Act of 1973 ("Section 504" or "the RA") defines "program or activity" as "all of the operations of ... a department, agency, special purpose district, or other instrumentality of a State or of a local government." 29 U.S.C.A. § 794(b)(1)(A); *Bassilos v. City of Torrance, CA*, 166 F. Supp. 3d 1061, 1068 (C.D. Cal. 2015) ("The ADA and the RA have overlapping objectives and are construed in the same way.").  This Court has previously noted that "[t]he legislative history of the ADA supports construing it generously and consistently with the RA," noting that Title II "extends the anti-discrimination prohibition embodied in section 504 [of the Rehabilitation Act] to all actions of state and local governments."  *Bassilos*, 166 F. Supp. 3d at 1068 (quoting H.R. Rep. No. 101–485(II), at 84 (1990), *reprinted in* 1990 U.S.C.C.A.N. 303, 367). Consistent with the foregoing, the Ninth Circuit cautioned against engaging in "needless 'hair-splitting arguments'" and held that the ADA's use of the phrase "services, programs, or activities" "bring[s] within its scope anything a public entity does." *Barden v. City of Sacramento*, 292 F.3d 1073, 1076 (9th Cir.2002) (brackets and quotations omitted).

Even construing all of the allegations in the FAC to be "action[s] taken by a public entity," the Court finds no evidence to show that Lewis was either discriminated against by Defendants for any reason **or** that she was subject to discrimination **because of** her disability.  42 U.S.C. § 12132. In fact, Plaintiffs only mention Lewis **twice** throughout the substantive factual allegations of their FAC—once to outline her disability and status as a Plaintiff in the case, and again to vaguely contend that she, along with the other Plaintiffs, "experienced anxiety, nervousness, and restlessness" and "suffered physical and emotional injuries" because of the "intimidation, harassment, and discriminatory acts of the Defendants." (FAC ¶¶ 20, 69.) Plaintiffs fail to explain how Defendants' investigations, citations, notices, and filing of criminal charges against Plaintiff Vardui **specifically** constitute discrimination against **Lewis** as a disabled individual, since the only evidence of her connection to **any** of the allegations made in the FAC is that she has been a resident of Rosie's Garden since August 2017 and "has not left since." (FAC ¶ 20.)  As with the FHA claim, Plaintiffs fail to show that Defendants' actions as a whole constitute discrimination on the basis of disability, but **even if** Plaintiffs had plead facts showing Defendants' conduct was based upon a discriminatory animus, the FAC **fails to include any specific factual content to plausibly suggest that Defendants' conduct was solely because of Plaintiff Lewis' disability.** *See Weinreich,* 114 F.3d at 978-79; *Ashcroft*, 556 U.S. at 678.  The single and threadbare allegation that the "acts of the Defendants" caused Lewis to experience "anxiety, nervousness, and restlessness" suffer from unspecified physical and emotional injuries fails to specify what "acts" Lewis was subjected to or affected by, **or** that Defendants acted because of Lewis's disability and residency at Rosie's Garden.  The Court finds this vague implication wholly conclusory and insufficient to state a plausible claim for disability discrimination under even the liberal pleading standard applied in the context of ADA claims.

Moreover, the Court notes that Plaintiffs request relief in the form of compensatory damages pursuant to 42 U.S.C. §§ 12131-12134.  (FAC ¶ 6.)  It is well-settled in this Circuit that to recover monetary damages under Title II of the ADA, a plaintiff "must prove intentional discrimination on

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

**CASE NO.:   CV 18-08093 SJO (AGRx)**          **DATE: May 1, 2019**

the part of the defendant" amounting to "deliberate indifference" which "**requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood**."   *Duvall v. County of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001).  The public entity must therefore be put on "some form of notice" where the plaintiff has "alerted the public entity to his need for accommodation" if the need is not obvious.   *Id.*  For the reasons stated above, Plaintiffs fail to not only state a claim for intentional discrimination against Lewis because of her disability, but are likewise unable to show Defendants were "on notice" that Lewis, a **qualified** individual with a disability under the ADA, resided in either facility where they conducted their investigations.

In sum, the Court concludes that Plaintiff Rosemary R. Lewis fails to state a plausible claim for disability discrimination under Title II of the ADA.  Thus, the remaining claim the Court addresses is Plaintiffs' cause of action for interference, coercion, or intimidation under 42 U.S.C. § 12203(b) of the ADA.[4]

> b.   Plaintiffs Fail to State a Claim for Interference, Coercion, or Intimidation Under Title II of the ADA

The anti-interference provision of the ADA states the following:

> "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter."

42 U.S.C. § 12203(b).  To the extent that the FAC claims a violation of the ADA's anti-interference provision based on Plaintiffs' disability discrimination cause of action, the anti-interference claim (which is duplicative) fails by virtue of Plaintiffs' inability to prove disability discrimination under 42

---

[4]  Although the FAC includes a single allegation that Plaintiff Vardui's arrest was "a form of retaliation against Plaintiff Vardui in violation of Title II of the ADA," its final claim for relief fails to include any mention of the ADA's anti-retaliation provision (42 U.S.C. § 12203(a)). Instead, Plaintiffs only assert a claim under Section 12203(b) of this code section, which prohibits "interference, coercion, or intimidation" in violation of the ADA. 42 U.S.C. § 12203(b).  Thus, the Court declines to expend additional time or resources painstakingly addressing the merits of Plaintiffs' apparent attempt to assert an ADA retaliation claim in light of the pleading deficiencies already present in the entirety of their FAC.  Regardless, the Court's analysis as to both claims would be the same.  *See Kerrigan v. Board of Educ.*, 2015 WL 4591053, at *5 n.20 (D. Md. July 28, 2015) ("Though Kerrigan titled count four as 'retaliation,' he brings his claim under 42 U.S.C. § 12203(b), which governs interference, coercion, or intimidation, not retaliation, which is governed by 42 U.S.C. § 12203(a). However, the elements are the same.").

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

**CASE NO.:  CV 18-08093 SJO (AGRx)**          **DATE: May 1, 2019**

U.S.C. § 12132.  To the extent Plaintiffs are claiming a separate and distinct violation of the ADA's anti-interference provision, Plaintiffs must plead facts plausibly showing that they were subject to "coerc[ion]," "intimidat[ion]," a "threat[ ]" or "interference" within the meaning of the statute.

The scope of the ADA's anti-interference provision is "guided" by the Ninth Circuit's "treatment of the [FHA's] interference provision" which reaches "all practices [that] have the effect of interfering with the exercise of rights under the federal fair housing laws." *Brown v. City of Tucson*, 336 F.3d 1181, 1191 (9th Cir. 2003) (quotation marks omitted).  However, **the ADA's anti-interference provision is not so "broad as to prohibit any action whatsoever that in any way hinders a member of a protected class."** *Id.* at 1192 (quotation marks omitted).   Although the Ninth Circuit has not squarely addressed a causality requirement imposed by the ADA's anti-interference provision, it is well-recognized that, parallel to a FHA retaliation claim, Plaintiffs must show a causal link between their protected activity or status under the ADA and the purported interference to plausibly state an ADA anti-interference claim.[5]

---

[5]  Courts in other circuits that have squarely addressed the causality requirement have imposed a causality and/or discriminatory intent element to ADA anti-interference claims. *See Frakes v. Peoria Sch. Dist. No. 150*, 872 F.3d 545, 550-51 (7th Cir. 2017) (following the Ninth Circuit in *Brown v. City of Tucson*,  336 F.3d 1181 (9th Cir. 2003),  and applying the FHA framework fo an ADA interference claim: "a plaintiff alleging an ADA interference claim must demonstrate that: (1) she engaged in activity statutorily protected by the ADA; (2) she was engaged in, or aided or encouraged others in, the exercise or enjoyment of ADA protected rights; (3) the defendants coerced, threatened, intimidated, or interfered on account of her protected activity; and (4) the defendants were motivated by an intent to discriminate.") (citing *Bloch v. Frischholz*, 587 F.3d 771, 783 (7th Cir. 2009) (en banc) (framework for FHA interference claim)); " *Lagervall v. Missoula County Pub. Sch.*, 2017 WL 3610549, at *5 (D. Mont. Aug. 22, 2017) ("Although the Court has not located decisional law within the Ninth Circuit expressly discussing whether section 12203(b) requires that a causal link be shown between a plaintiff's protected conduct and a defendant's unlawful conduct, the Court concludes, by analogy with other federal laws, that section 12203(b) requires a causal link.... Because section 12203(b) of the ADA employs language identical to the language in section 3617 of the Fair Housing Act, the Court construes section 12203(b) to impose the same requirement of a causal link between a plaintiff's protected activities and the defendant's alleged wrongful coercive or intimidating conduct. Thus, Lagervall must demonstrate that any alleged coercive or intimidating conduct committed by Missoula Schools was because of his engagement in activities protected under the ADA."); *Youngblood v. Prudential Ins. Co.*, 706 F. Supp. 2d 831, 838-40 (M.D. Tenn. 2010) (concluding that the FHA provides the relevant framework for ADA anti-interference claims, stating that "to rise to the level of actionable interference with plaintiff's ADA-protected rights pursuant to § 12203(b), ... actions must have been taken because of plaintiff's alleged disability, and not because of their desire to avoid paying benefits to which plaintiff alleges her entitlement, or for any other reason.").

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

**CASE NO.:** <u>CV 18-08093 SJO (AGRx)</u>          **DATE:** <u>May 1, 2019</u>

As with the Court's analysis of Plaintiffs' FHA claim, the FAC fails to include **specific** facts showing that Defendants coerced, intimidated, threatened, or interfered with Plaintiffs in the exercise of any purported rights granted under the FHA **because of** Plaintiff Lewis's disability or the fact that Plaintiffs intended to provide housing to individuals with disabilities. Although the investigations, citations, and notices outlined in the FAC may constitute "interference" with Plaintiffs' activities in the broadest sense of the term, the ADA's anti-interference provision does not prohibit Defendants' actions solely because they have the effect of "hinder[ing]" an individual with a qualified disability if such actions are **not motivated** by Plaintiffs' engagement in rights granted by the ADA. *See Brown*, 336 F.3d at 1192. Further, "conclusory allegations" of coercion, intimidation, threats, or interference are insufficient to support an ADA interference claim. *Id.* at 1193. Here, Plaintiffs repeatedly contend that Defendants' investigations into the purportedly unlawful operation of Rosie's Garden and Golden Gate were "harassment," "intimidation," "retaliation," and "discriminatory," but fail to provide more than these threadbare conclusions to show that Defendants' conduct was **motivated or because of** a discriminatory animus toward individuals protected under the ADA. (*See generally* FAC.)

Moreover, Plaintiffs' allegations that Defendants Shanahan and Alvarez harassed their residents by "constantly making unannounced visits; questioning residents; taking pictures without permission; inspecting personal properties; violating residents' rights by inspecting their medications" and allegedly engaging in "other unpermitted actions" are likewise insufficient to show their "heavy-handed demeanor" was "because of [Plaintiffs'] engagement in activities protected under the ADA" or Plaintiff Lewis's disability. (FAC 9.) *See, e.g., Lagervall*, 2017 WL 3610549, at *5.

In sum, without additional facts plausibly showing Defendants' actions were motivated or caused by a discriminatory intent, Plaintiffs fail to plausibly state a claim for interference under the ADA.

     c.    <u>Conclusion as to Plaintiffs' ADA Claim</u>

On balance, the Court finds that Plaintiffs' ADA cause of action fails because the FAC contains no specific facts plausibly showing Defendants' conduct occurred as a result of a discriminatory animus toward Plaintiffs' engagement in protections prescribed under Title II of the ADA.

Accordingly, the Court **GRANTS** Defendants' Motions to dismiss Plaintiffs' ADA claim pursuant to Rule 12(b)(6) and **DISMISSES** Plaintiffs' ADA claim for failing to satisfy the minimum federal pleading requirements necessary to state a claim for violation of the ADA.

    E.    <u>Conclusion as to Plaintiffs' FHA and ADA Claims</u>

The Court concludes that Plaintiffs have failed to plausibly state claims under the FHA or ADA upon which relief can be granted. Although Defendants assert other arguments to justify dismissal of Plaintiffs' claim, the Court declines to address the merits of these issues in light of its dismissal

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority        ____
Send            ____
Enter           ____
Closed          ____
JS-5/JS-6        ____
Scan Only       ____

**CASE NO.:   CV 18-08093 SJO (AGRx)**        **DATE: May 1, 2019**

of the entirety of Plaintiffs' FAC.

V.      RULING

As to the Article III standing issue, the Court **GRANTS IN PART** City Defendants' Motion to dismiss for lack of standing as to Defendants Terrazas and Pellegrini for both the FHA and ADA claims and **DENIES IN PART** City Defendants' Motion insofar as it moves to dismiss Plaintiffs' FHA and ADA claims as to the remaining City Defendants for lack of standing.  The Court also **DENIES** County and State Defendants' Motions to dismiss insofar as they move to dismiss Plaintiffs' FHA and ADA claims against them for lack of standing.

As to Defendants' 12(b)(6) Motions, the Court **GRANTS** Defendants' Motions and **DISMISSES** Plaintiffs' FAC.  In light of the fact that Plaintiffs have already attempted to amend their complaint and continue to either be unable to meet Article III standing requirements or pleading requirements under Federal Rule of Civil Procedure 12(b)(6), the Court **DISMISSES** the FAC **without leave to amend**.  *See Mendia v. Garcia*, 165 F. Supp. 3d 861, 874 (N.D. Cal. 2016) ('Courts have broader discretion in denying motions for leave to amend after leave to amend has already been granted." (citing *Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir.2002)).  This case shall close.

**IT IS SO ORDERED.**